UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MATTHEW LENAHAN,

    Plaintiff,

v.

THE CINCINNATI INSURANCE
COMPANY,

    Defendant.

Case No. 1:24-cv-722

JUDGE DOUGLAS R. COLE
Magistrate Judge Litkovitz

## OPINION AND ORDER

Defendant Cincinnati Insurance Company moves to dismiss or stay pro se Plaintiff Matthew Lenahan's Complaint (Doc. 1) alleging employment discrimination. Defendant contends that the Court should abstain under the *Colorado River* doctrine because Lenahan filed a substantially similar action in state court first. (Def.'s Mot. to Dismiss, Doc. 6, #28). Alternatively, it argues that the Court should dismiss Lenahan's claim as time-barred. (*Id.*). While the Court finds the claim was timely, it ultimately agrees with Defendant that abstention is appropriate here. For the reasons explained below, the Court **GRANTS** Defendant's Motion to Dismiss or Stay (Doc. 6), and **STAYS** this case pending resolution of the related state case.

## BACKGROUND

Defendant Cincinnati Insurance Company employed Plaintiff Matthew Lenahan as the Head of Everyday Innovation from December 7, 2020, to November 30, 2023. (Doc. 1, #8). For Lenahan's first two and a half years at the company, he thrived and consistently received "[e]xceeding [e]xpectations" in his performance

reviews. (*Id.*). But toward the end of his time there, beginning in August 2023, his supervisor started asking questions about his race and family. (*Id.*). Then, at his next performance review, his supervisor downgraded his performance to "[n]eeds [i]mprovement." (*Id.*). As a result of his now-poor performance, the supervisor wanted to demote him to a lesser position, with a correspondingly lower salary. (*Id.*). Lenahan, however, alleges that there was no "objective decrease in performance," and the only explanation for this demotion was discrimination on the basis of his race: black/bi-racial. (*Id.*).

Two weeks after the proposed demotion, the supervisor, a white woman, took other detrimental actions, including (1) isolating Lenahan from his colleagues, "who held information critical to his job and high priority tasks," (2) excluding Lenahan from relevant meetings, (3) setting unrealistic deadlines for his work, and (4) "requir[ing] Plaintiff to repeat certain phrases out loud that he did not agree with [where he] felt demoralized and humiliated … [and] like 'a circus animal.'" (*Id.* at #9). Lenahan alleges that his similarly situated colleagues did not suffer from like treatment. (*Id.* at #9–10).

The situation continued to deteriorate. By October 27, 2023, the supervisor had threatened to fire Lenahan and sent him a warning letter, which allegedly included "inaccuracies and unfair mischaracterizations of Plaintiff's work." (*Id.* at #10). Two weeks later, the warning letter turned into a probation letter, and Plaintiff was placed "into the company's PPR steps,"[1] limiting his ability to apply to other internal

---

[1] Lenahan does not explain the acronym "PPR," but it appears to refer to the company's program for placing employees into probationary status.

2

jobs or receive any raise or bonus. (*Id.* at #10–11). Yet he was denied job training to address these supposed shortcomings. (*Id.* at #11). Lenahan reported these events to the company's human resources department on four separate occasions, to no avail. (*Id.*).

Fed up with the lack of action on human resource's part, Lenahan says that on November 28, 2023, he dual-filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Ohio Civil Rights Commission. (*Id.*). And he emailed that charge to Cincinnati Insurance's "[l]egal point of contact" that day. (*Id.*).

The next day, his supervisor cancelled a meeting with Lenahan that had been set to go over his work assignment. (*Id.*). And the day after that, a human resources representative called him and terminated him. (*Id.* at #11–12). The proffered reason was that the supervisor never received the work that the meeting was meant to discuss. (*Id.*).

His termination appears to have led him to dual-file another charge for discrimination based on retaliation. He attaches that charge to his Complaint. (*Id.* at #17). The charge is "Digitally Signed By" Lenahan, and dated September 16, 2024. (*Id.*). He also attaches a Notice of Right to Sue letter from the EEOC, dated the next day (September 17, 2024).[2] (*Id.* at #13). Three months later, on December 17, 2024,

---

[2] It is not clear why the September 2024 EEOC charge received a one-day turnaround in terms of a right-to-sue letter, but the Court need not explore that further for present purposes.

Lenahan, proceeding pro se, sued Cincinnati Insurance in this Court for retaliation under Title VII, 42 U.S.C. § 2000e. (*Id.* at #3, 12).

But there is an additional wrinkle. Lenahan first sued Cincinnati Insurance in state court for these same events. (Doc. 6, #29). On that front, Lenahan does not dispute the following facts: he filed the state suit on November 21, 2024, less than a month before filing this suit, (*id.*; State Compl., Doc. 6-1, #42); Cincinnati Insurance answered the state complaint on December 27 (10 days after Lenahan filed this action), (Doc. 6, #30; Doc. 6-2, #51); and the state court set a case management conference for April 22, 2025, (Doc. 6, #30; Doc. 6-3, #58). One more thing worth noting—while Lenahan filed this federal suit on December 17, 2024, (Doc. 1), he did not provide a summons to the Clerk until March 12, 2025, (Doc. 3), and service was not completed on Cincinnati Insurance until March 14, 2025, (Doc. 5).

Once served, Cincinnati Insurance filed the instant Motion to Dismiss on April 4, 2025. (Doc. 6). There, Cincinnati Insurance asks the Court to either dismiss or stay the action under the *Colorado River* doctrine. (*Id.* at #28). Alternatively, it requests that the Court dismiss the case because Lenahan's claim is time barred. (*Id.*). Lenahan responded, (Doc. 14-1),[3] and Cincinnati Insurance replied, (Doc. 16). So the matter is ripe for review.

---

[3] Document 14 was inadvertently filed, and so the response was refiled as Document 14-1. So the Court will refer to the publicly-available version, Document 14-1, in this Opinion and Order.

## LEGAL STANDARD

As Cincinnati Insurance observes, courts have not always been consistent in their views on the procedural vehicle parties should use to move for abstention under *Colorado River*. (Doc. 6, #30 n.2). The Supreme Court and Sixth Circuit have yet to address the issue. So some courts in this circuit analyze abstention under Federal Rule of Civil Procedure 12(b)(1) (lack of subject-matter jurisdiction), while others address the topic under Rule 12(b)(6) (failure to state a claim). *Compare Driskill v. Regions Bank*, No. 3:18-cv-102, 2019 WL 13122497, at *3–4 (E.D. Tenn Mar. 22, 2019) (discussing *Colorado River* in terms of the "concurrent jurisdiction" of the state court and finding that the state court "obtain[ed] jurisdiction over the plaintiff's general claims" first) *and Kornhauser v. Notting Hill, LLC*, No. 1:17-cv-719, 2018 WL 4625552, at *3 (S.D. Ohio Sep. 27, 2018) (granting motion to dismiss under Rule 12(b)(1) due to *Colorado River* abstention), *with Perry v. Cnty. of Wayne*, No. 24-12056, 2024 WL 4697673, at *2, 4–5 (E.D. Mich. Nov. 6, 2024) (holding abstention was warranted under Rule 12(b)(6)). Perhaps that conflict arises because "[n]either Rule 12(b)(1) or 12(b)(6) fit perfectly as the vehicle for a motion [to abstain]." *OMT Addiction Ctrs, LLC v. Freedom Healthcare Props. of Tex., LLC*, 770 F. Supp. 3d 1090, 1102 (M.D. Tenn. 2025). After all, in seeking abstention, the defendant is not claiming that the Court lacks federal question jurisdiction or that the plaintiff lacks standing, the usual grist for Rule 12(b)(1) motions. Nor is the defendant arguing that the pleading fails to state a viable claim, the usual Rule 12(b)(6) inquiry. *Id.*

Nonetheless, while neither may "fit perfectly," Rule 12(b)(1) is the better fit. After all, "Rule 12(b)(6) judgments are dismissals on the merits and Rule 12(b)(1)

5

dismissals are not." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 917 (6th Cir. 1986) (citation omitted). And abstention doctrines do not address the merits of the claim. *See OMT Addiction Ctrs.*, 770 F. Supp. 3d at 1102. Rather, abstention under *Colorado River* merely means the state court is the more appropriate forum, a resolution more akin to a jurisdictional determination (who should decide?) than a merits decision (is it a good claim?). So the Court relies on Rule 12(b)(1) as the proper procedural vehicle here.[4]

That raises a second issue—what can the Court properly consider in resolving the motion? Typically, attacks under Rule 12(b)(1) come in two flavors—facial or factual. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "A *facial* attack … merely questions the sufficiency of the pleading." *Id.* So in reviewing such a challenge, "the district court must accept all material allegations of the complaint as true." *Phillips v. Trump*, No. 18-6341, 2019 WL 7372704, at *1 (6th Cir. Nov. 20, 2019) (citations omitted). But as to *factual* attacks, "no presumptive truthfulness applies to the factual allegations." *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. And when reviewing a factual attack, courts may consider sources outside the

---

[4] Normally, when a defendant challenges the Court's jurisdiction under Rule 12(b)(1), "the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers*, 798 F.2d at 915 (emphasis original). But as to requests for abstention under *Colorado River*, the defendant, as the party seeking it, bears the burden. *See Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) ("[Defendant] has not met its burden in proving that abstention is required."). Here, Lenahan has satisfied his general burden to demonstrate federal question jurisdiction because he raises a claim under Title VII, a federal law. And it makes sense for the defendant to have the burden to prove that this case falls within the "extraordinary and narrow exception" to the Court's normal exercise of jurisdiction, *Colorado River*, 424 U.S. at 813, which this Court finds that Cincinnati Insurance does, *see* infra Part B.2. But the Court notes this tension in using a Rule 12(b)(1) motion as the procedural vehicle for *Colorado River* abstention.

6

pleadings. *Id.*; *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("[T]he court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits."). Addressing abstention under *Colorado River* necessarily requires the Court to look beyond the pleadings and evaluate the similarity of the state court action. *See* infra Law & Analysis, Part B.1. So the Court concludes this is akin to a factual attack, meaning the Court will decide the issue on the evidence, not the allegations.

While the Court declines to analyze abstention under Rule 12(b)(6), Cincinnati Insurance also includes a separate argument—the statute of limitations—that at least could fall within that rule's contours. True, "a motion under Rule 12(b)(6), which considers only allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). At the same time, though, "sometimes the allegations in the complaint affirmatively show that the claim is time-barred," in which case it would be appropriate for the Court to dismiss the claim under Rule 12(b)(6). *Id.*

In determining whether a given statute-of-limitations challenge falls within this exception, the standard rules for review under Rule 12(b)(6) apply. The Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up). That is so, however, only as to well-pleaded factual allegations. The Court need not accept as

7

true any legal conclusions alleged in a complaint; "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). And while well-pleaded allegations are accepted as true, they are just that—allegations.

Beyond that, a court analyzing a motion to dismiss under Rule 12(b)(6) generally must confine its review to the pleadings. *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). That said, a court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

## LAW AND ANALYSIS

Defendant Cincinnati Insurance seeks to dismiss or stay this case on two grounds: (1) *Colorado River* abstention, and (2) the statute of limitations. Taking those in reverse order, the Court concludes that Lenahan's claim is not time-barred, but that abstention is appropriate. Then there is the separate question of relief—the law appears unsettled on whether the Court should dismiss the case, or instead stay it, when abstaining under *Colorado River*. Ultimately, the Court determines the latter is appropriate and thus stays the case pending resolution of the state action.

A.    **Lenahan Timely Filed the Federal Complaint.**

Start with the timeliness issue. Under Title VII, an individual must file their civil action within ninety days after receiving a notice of right to sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). Federal courts strictly enforce the ninety-day window. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000). And even with respect to pro se litigants, "procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Id.* (quoting *Baldwin Cnty. Welcome Ctr., v. Brown*, 466 U.S. 147, 152 (1984) (per curiam)) (bracket omitted).

The parties' dispute on timeliness here centers on the date on which the clock started. Under the statute, the clock starts when a plaintiff *receives* the letter. *Seay v. Tenn. Valley Auth*, 339 F.3d 454, 469 (6th Cir. 2003) (citing 42 U.S.C. § 2000e-5(f)(1)); (Doc. 1, #15 (informing recipients to file suit within 90 days of receiving notice)). But the date of that receipt is the source of their dispute. Cincinnati Insurance points out that the notice of right to sue letter attached to the Complaint is dated September 17, 2024. (Doc. 6, #38 (citing Doc. 1, #13)). From that, it assumes that Lenahan also received the letter that day, which means he would have needed to file his federal complaint by December 16. (*See id.*). But he did not file it until December 17. (Doc. 1). Lenahan, on the other hand, argues that, while the letter may have been drafted on September 17, he did not actually receive it until September 19, (Doc. 14-1, #83), which is also what he alleges in his Complaint, (Doc. 1, #5). So, relying on that date, he argues that he timely filed his Complaint.

9

The Court agrees with Lenahan and finds, at least at this stage of the litigation, that he has plausibly alleged a timely claim. He pleaded that he received the notice of right to sue letter on or around September 19, and the Court is obligated to treat all well-pleaded allegations as true. *Bassett*, 528 F.3d at 430. Moreover, Cincinnati Insurance has not offered anything that meaningfully throws that allegation into doubt. So the Court concludes that Lenahan's claim is not time-barred, at least for present purposes.[5]

## B.    The Court Will Abstain under the *Colorado River* Doctrine.

Separately, Cincinnati Insurance argues that the Court should abstain under *Colorado River* because a parallel state court action was filed first, and the Court should avoid piecemeal litigation. (Doc. 6, #30–37). Lenahan, for his part, urges the Court to maintain jurisdiction over the case and not abstain because these are two distinct actions. (Doc. 14-1, #81–82). While the Court generally has an obligation to hear the cases that fall within its jurisdiction, the Court finds that this case meets *Colorado River*'s standard. Thus, the Court declines to exercise its jurisdiction here and instead will abstain.

As a general rule, "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)

---

[5] Lenahan also attached to his Response an email with the EEOC, confirming that the letter was drafted on the 17th but "released" on the 19th. (Doc. 14-1, #87–88). Of course, the Court does not rely on this email because it generally must limit itself to the pleadings. But if the email is accurate, it is also difficult to see how Cincinnati Insurance could prevail on a statute of limitations defense down the road.

10

(quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). And federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them." *Id.* But considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" can direct the Court to abstain nonetheless. *Id.* (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). So *Colorado River* established that federal courts *can* abstain "in deference to a pending state court action." *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 571 (6th Cir. 1994).

But in deciding *whether* to abstain, the *Colorado River* analysis requires two steps. *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 393 (6th Cir. 2019). First, the Court asks the threshold question of whether the state and federal actions are "parallel," which turns on an assessment of similarity. *Id.* at 393–94. Then, if the two proceedings are sufficiently similar to be considered parallel, the Court weighs a multitude of factors to decide whether it should exercise its discretion to abstain. *Id.* at 393. The Court addresses each step in turn.

    1.    **The Two Actions Are Parallel.**

The federal and state actions need not be identical to be parallel. *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998). "It is enough if the two proceedings are substantially similar." *Id.* (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)) (cleaned up). When the two actions are "predicated on the same allegations as to the same material facts," they are substantially similar under *Colorado River*. *Id.*

11

Lenahan's federal and state complaints are parallel, almost to the point of being identical. They are not just similar; significant portions of the federal complaint are a verbatim copy of the state complaint. Cincinnati Insurance helpfully supplies a chart providing a paragraph-by-paragraph comparison of the factual allegations, showing most of the factual paragraphs contain the exact same language. (Doc. 16, #95–97 (comparing the federal complaint (Doc. 1) and the state complaint (Doc. 6-1)). Indeed, "Paragraphs 1 through 14 of Plaintiff's Federal Complaint are identical to Paragraphs 7 through 20 of Plaintiff's State Complaint." (*Id.* at #97). And portions of paragraphs 15, 17, and 19, and all of paragraphs 20 and 21, of the federal complaint appear verbatim in the state complaint. (Doc. 1, #11–12; Doc. 6-1, #46–47).

So what about the portions of the complaints that are not identical? Are they different enough for the Court to reject the "parallel" label? Lenahan argues there are both factual and legal differences here. (Doc. 14-1, #81). On the factual side, Lenahan expands on his allegations a bit in his federal complaint, adding, for example, that he sent the original EEOC charge to Defendant and what the human resources representative allegedly told him when he was terminated. (Doc. 1, #11–12). But while those facts are admittedly relevant, they do not alter the material issues in either case, meaning the two cases are substantially similar as a factual matter.

On the legal side, Lenahan likewise advances substantially similar causes of action. True, they are not identical. In his federal complaint, Lenahan checked boxes indicating that he was bringing the action for retaliation under Title VII, 42 U.S.C. § 2000e, and did not mention any related state law. (Doc. 1, #3–4). And, at least at

12

first glance, Lenahan's state complaint expressly raises a claim for employment discrimination only under state law, specifically Ohio Revised Code § 4112.01. (Doc. 6-1, #47). But that does not tell the whole story. Even a cursory glance at the state complaint shows that Lenahan also mentions Title VII three times and ultimately seeks relief in that action under both federal and state law. (*See id.* at #42, 47 ("Because race was a motivating factor and made a difference in the decision to terminate Plaintiff, Defendant violated Ohio R.C. 4112.01 et. seq. and Title VII of the Civil Rights Act.")). So, if anything, the state case is more comprehensive—it includes both state and federal causes of action.

In any event, notwithstanding any technical differences, both claims address Cincinnati Insurance's potential discrimination against Lenahan on the basis of his race, and the company's alleged retaliation against him for asserting his rights under Title VII to be free of such discrimination. And Ohio courts analyze state-law employment discrimination claims (including retaliation claims) using the same analytical framework that federal courts apply to Title VII claims. *See Brown v. O'Reilly Auto. Stores, Inc.*, 54 N.E.3d 638, 645 (Ohio Ct. App. 2015) ("Ohio courts may rely on federal anti-discrimination case law when interpreting and deciding claims brought under R.C. 4112.02."). Thus, the addition (or omission) of the Ohio state-law claim does not change the nature of the lawsuit, and the two actions are parallel.

Lenahan focuses on how he characterizes the federal action solely as "retaliation" whereas the state action is directed more generally at Cincinnati Insurance's racial discrimination. (Doc. 14-1, #81). But contrary to his

13

characterization, his federal complaint does not solely "allege retaliatory actions uniquely triggered by Plaintiff's EEOC charge." (*Id.*). Rather, he includes multiple allegations of his supervisor's earlier discriminatory behavior, such as the proffered demotion on September 29, 2023, which predates his first EEOC charge, filed on November 28, 2023. (Doc. 1, #8–11). Conversely, he includes in his state complaint factual allegations regarding Cincinnati Insurance's alleged retaliation against him for filing the EEOC charge. (Doc. 6-1, #46–47). So any nuances about the extent to which retaliation lies at the core of the two suits does not change the result in comparing them. They are "predicated on the same allegations as to the same material facts." *Romine*, 160 F.3d at 340. Therefore, the actions are parallel for purposes of the first step of the *Colorado River* analysis.

### 2. The Factors Support Abstention.

With the threshold factor met, the Court next considers eight factors that guide its decision on whether to abstain. The Supreme Court set forth the first four of these factors in *Colorado River* itself, and it added the remaining four in later cases. *Romine*, 160 F.3d at 340–41. The Sixth Circuit recently articulated the eight factors as:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

14

*S2 Yachts, Inc. v. ERH Marine Corp.*, 855 F. App'x 273, 279 (6th Cir. 2021) (bracket omitted). Importantly, while the Supreme Court has identified eight factors, the decision whether to abstain "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). And in undertaking that balancing act, the Court also must remain mindful that "by far the most important factor is … the clear federal policy of avoidance of piecemeal adjudication." *Id.* (cleaned up).

The Court finds that the balance of the eight factors, even when "weighted in favor" of exercising jurisdiction, supports abstention here. Admittedly, the first two factors point toward the Court exercising its jurisdiction. There is no property at issue in these cases, so there is no particular concern about inconsistent property dispositions, a key driver for abstention in *Colorado River*. 424 U.S. at 819. And Defendant admits that "both fora are equally convenient." (Doc. 6, #35).

Aside from those two, though, the rest of the factors point to abstention. Start with the "most important" factor: avoidance of piecemeal litigation. Because of the substantial similarity between these two cases, "the district court would necessarily have to litigate the same issue [under consideration] by the state trial court." *Preferred Care of Del., Inc. v. VanArsdale*, 676 F. App'x 388, 395 (6th Cir. 2017). In this case, that issue is whether Cincinnati Insurance, and specifically Lenahan's supervisor, discriminated on the basis of race (by retaliating against him for exercising his Title VII rights) when it terminated him, the same issue that lies at

15

the core of his state-court action. Lenahan thus asks this Court to engage in "the very definition of creating piecemeal litigation—where different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Id.* (quotation omitted). Stated differently, one of the guiding principles for *Colorado River* was the "conservation of judicial resources." 424 U.S. at 817. Having two courts decide the same issue needlessly wastes resources that otherwise could go to other litigants in other cases, the antithesis of conserving resources. *Id.* Thus, this "paramount" consideration weighs heavily in favor of abstention. *Preferred Care of Del., Inc.*, 676 F. App'x at 395.

The fourth factor, the order in which jurisdiction was obtained, also favors abstention. Lenahan filed the state complaint almost a month *before* the federal complaint. (*See* Doc. 1, #1; Doc. 6-1, #42). And Cincinnati Insurance was served in the federal case several months after it appeared in the state case. (Doc. 6, #34).

Skipping to the seventh factor, the state case has progressed farther than this federal one. In the state case, as of the time that Cincinnati Insurance moved to dismiss here, Cincinnati Insurance already had filed its Answer in the other matter, the parties had submitted a discovery plan, and the state court had held a scheduling conference. (*Id.*; *see* Doc. 6-2; Doc. 6-3). Since then, based on the Court's review of the state docket, it appears the parties have had a second telephone conference, and the state court has issued an agreed-upon protective order.[6] This case, by contrast, is still

---

[6] *See* https://clerkservices.bcohio.gov/eservices/searchresults.page?x=oYuZT3XOq8tGt0tyj
O1nxCer3KaZoPEch8qfccCGcKqt487IhREQIIrRRuSWUIInQf-iLC7IPk5-ePPOxMtFQA.
The Court "may take judicial notice of public records, and [it is] not required to accept as true

16

in its infancy. Since Lenahan filed his Complaint, the only action has been this motion to dismiss and the related briefing. Thus, the seventh factor also points towards abstention.

The fifth, sixth, and eighth factors are interrelated, so the Court discusses them together. While not as strong as the above factors, they also counsel in favor of abstention. The factors are, respectively, whether the source of governing law is state or federal, the adequacy of the state court action to protect the federal plaintiff's rights, and the presence or absence of concurrent jurisdiction. *S2 Yachts, Inc.*, 855 F. App'x at 279. Starting with the source of governing law, Lenahan raises his claim here under Title VII, a federal statute, so that favors not abstaining. (Doc. 1, #3). But the state court has concurrent jurisdiction. And "the source-of-law factor has less significance here [] since the federal courts' jurisdiction to enforce [Title VII] is concurrent with that of the state courts." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25. True, "the presence of federal-law issues must always be a major consideration weighing against surrender." *Id.* at 26. But that statement must also be considered in connection with the sixth factor, the adequacy of state courts to protect the asserted rights. Here, like in *Romine*, "[t]here can be no legitimate contention that the Ohio state courts are incapable of safeguarding these rights." 160 F.3d at 342. Ohio state courts frequently hear and decide employment discrimination cases, under both federal and related state law. In short, an action in Ohio's state courts will adequately

---

factual allegations that are contradicted by those records." *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021).

17

protect a plaintiff's rights in the employment discrimination context, the state court has concurrent jurisdiction, and, while the claim is based on federal law, that is less important because there is concurrent jurisdiction. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25; *Romine*, 160 F.3d at 342. Therefore, these factors also support abstention.

In sum, based on a careful weighing of the eight factors, and keeping in mind the "most important" concern—avoiding piecemeal litigation—the Court concludes, even after weighting the balance in favor of exercising jurisdiction, that it should abstain.

**C.    A Stay Is the Next Appropriate Step.**

That leaves the question of how to implement the decision to abstain. Cincinnati Insurance moves for dismissal or, alternatively, for a stay pending resolution of the state case. (Doc. 6, #30). Like the proper procedural vehicle for considering the request in the first instance, courts are mixed on the proper next step after a court abstains under *Colorado River*. Courts have both dismissed and stayed cases. *Compare Kornhauser*, 2018 WL 4625552, at *3 (granting defendant's motion to dismiss and dismissing the case) *and Smith v. First Franklin Home Loan Servs.*, No. 2:08-cv-793, 2009 WL 648530, at *2 (S.D. Ohio Mar. 11, 2009) (same), *with Brand Energy Servs., LLC v. Enerfab Power & Indus., Inc.*, No. 1:16-cv-1043, 2016 WL 6600644, at *5 (S.D. Ohio Nov. 8, 2016) (staying the case pending resolution of the state case). In *Colorado River* itself, the district court dismissed the case in deference to the state court, and the Supreme Court affirmed that dismissal. 424 U.S. at 806, 821.

While district courts in this circuit have gone differing directions over the past twenty years, the Sixth Circuit seemingly resolved the question in 2004, albeit in an unreported decision. *See Bates v. Van Buren Twp.*, 122 F. App'x 803 (6th Cir. 2004). There, the Circuit declared, "[w]e conclude that a stay is the best way to effectuate *Colorado River* abstention." *Id.* at 809. The appeals court highlighted how *Colorado River* abstention can be temporary because it only applies while the state case is pending, and there is a possibility that the parties could come back to federal court. *Id.* at 808–09. Additionally, a stay would "prevent statute of limitations problems," remove the burden of filing fee costs, and be "more efficient from the court's point of view, since the post-abstention case would stay with the original judge, who is familiar with the case." *Id.* at 809. The Sixth Circuit concluded its analysis by holding, "[w]e therefore join other circuits in requiring a stay of proceedings rather than a dismissal in *Colorado River* abstention cases." *Id.* And, while the case is unreported and thus not binding precedent, so far as the Court can tell, no later case countermands its pronouncement on this issue. *Cf. William Powell Co. v. Nat'l Indem. Co.*, 18 F.4th 856, 872 (6th Cir. 2021) (noting without objection that the lower court had stayed the federal matter when abstaining under *Colorado River*).

True, some of the concerns justifying the stay in *Bates* do not apply here. For example, the court there pointed out that *Colorado River* abstention, unlike *Younger* abstention, does not require identical parties. 122 F. App'x at 809 n.2. Theoretically, a non-identical party may want to pursue its claim in federal court following resolution of the state suit, assuming res judicata or similar doctrines did not apply.

19

*Id.* at 809. And even if the parties are identical, there could be situations where the state court action will not resolve all outstanding claims, which may then need to be litigated in the federal court action. *Id.* Here, though, the parties are identical, and the res judicata effect of any judgment on the merits in the companion state court action would almost certainly extend to the federal claim in this suit, given that both cases raise Title VII claims, and that the framework for assessing the Ohio state-law claim tracks its federal counterpart. Of course, the Court does not decide at this point the claim-preclusive effect of a state court judgment that has yet to issue. But given the clear statement in *Bates*, coupled with the fact that a stay (as opposed to a dismissal) will work no harm on the parties, the Court determines it will stay these proceedings pending the resolution of the state case in the Court of Common Pleas, Butler County, Ohio, Case No. CV 2024 11 2363. (Doc. 6-2, #51 (stating case number)).

## CONCLUSION

For the reasons above, the Court **GRANTS** Defendant's Motion to Dismiss or Stay (Doc. 6). Specifically, the Court will **ABSTAIN** and **STAY** this case pending resolution of the state case. Within thirty days of the termination of that case, whether by judgment on the merits or otherwise, the parties shall file a status report advising this Court of the parties' view of the appropriate path forward here.

**SO ORDERED.**

December 8, 2025
**DATE**

DOUGLAS R. COLE
UNITED STATES DISTRICT JUDGE